UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LINDA NORKAVAGE,

    Plaintiff,

vs.                                      Case No. 3:08-cv-1085-J-MCR

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

**MEMORANDUM OPINION AND ORDER**[1]

This case is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED**.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and disability insurance benefits on February 6, 2006, alleging an inability to work since August 1, 2005. (Tr. 67-73). The Social Security Administration denied this application initially and upon reconsideration. (Tr. 33-34, 40-41). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on June 24, 2008. (Tr. 42, 53-56, 489-520). On July 16, 2008, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 14-24). On August 14, 2008, Plaintiff filed a Request for Review by the Appeals

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 13).

Council (Tr. 10), and on September 18, 2008, the Appeals Council denied that request. (Tr. 6-8). Plaintiff timely filed a Complaint in the U.S. District Court on November 13, 2008. (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since August 1, 2005, due to back, neck, arm, hand, hip, leg, and foot pain in addition to headaches and stress. (Tr. 16, 496).

### B.     Summary of Evidence Before the ALJ

On the date the ALJ's final decision was issued, Plaintiff was forty-one years old. She dropped out of school after completing the eighth grade (Tr. 495-496) and has past relevant work experience as a motel clerk and dietary aide. (Tr. 23, 114-116). Plaintiff's relevant medical history is discussed in the ALJ's decision and will be summarized here.

Plaintiff, having previously been awarded Social Security Administration ("SSA") disability benefits in 1998, returned to work in 2001 and withdrew from the program. (Doc. 9, p. 4). Plaintiff testified her pain returned to the extent that, in August 2005, she was again rendered unable to work. (Tr. 496). Plaintiff was examined, at the request of the SSA, on July 6, 2006 by Dr. Lynn Harper-Nimock, M.D. (Tr. 283-286). Dr. Harper-Nimock's diagnoses of Plaintiff included, *inter alia*, 1) degenerative disk disease; 2) status post laminectomy times two; 3) history of spondylolisthesis; 4) migraine headaches; 5) history of low back and neck pain with radiculopathy; and 6) history of diabetes, presently diet-controlled. (Tr. 286). Plaintiff's prognosis was rated as fair and limitations were noted as mild to moderate for sitting, standing, walking, climbing, and

heavy lifting. Id.

On the same day she treated with Dr. Harper-Novick, Plaintiff also saw Dr. Lynda Walls, Ph.D. Dr. Walls diagnosed Plaintiff as suffering from anxiety and depressive disorders. (Tr. 293). Dr. Walls's report included an opinion that Plaintiff appeared to have significant problems learning new tasks and dealing with stress. (Tr. 292). A residual functional capacity ("RFC") assessment was completed on July 12, 2006 by Dr. Eric Puestow, M.D., based on a review of the medical records. Dr. Puestow's evaluation indicated Plaintiff was able to work subject to "mild/moderate exertional limitations." (Tr. 296).

Plaintiff's treating physician, Dr. James Clower, M.D., examined her seven times between February 2006 and September 2006. (Tr. 317). Dr. Clower diagnosed Plaintiff as suffering from chronic back pain, status post lumbar fusion, failed back syndrome, and generalized anxiety disorder. Id. On September 8, 2006, Dr. Clower completed an RFC questionnaire wherein he opined Plaintiff did not have the capacity to perform even low stress sedentary work. (Tr. 317-321).

An MRI of Plaintiff's spine completed on September 12, 2006, indicated a multilevel degenerative disk disease that was greater at C3-4 and C5-6. (Tr. 322-323). A third RFC assessment, completed by Dr. Audrey Goodpasture, M.D. on October 18, 2006, after a review of Plaintiff's medical record, substantially supported the first. Dr. Goodpasture indicated Plaintiff retained the capacity to work subject only to minor postural and environmental limitations. (Tr. 326-333).

In January and April 2007 respectively, Plaintiff presented with pain in her right and left hands. (Tr. 349, 450). On each occasion, Dr. Philip Henkin, M.D. performed a

carpal tunnel release with transaction of transverse carpal tunnel ligament surgery while Plaintiff was under a local anaesthetic. (Tr. 356, 440). Also on each occasion, during intake interviews, Plaintiff reported she walked five miles twice a week. (Tr. 372, 467).

In a letter to Plaintiff's counsel dated February 5, 2008, Dr. Clower stated Plaintiff had been his patient since February 10, 2005 (in contrast with his September 2006 assertion that Plaintiff's treatment history dated to February 5, 2006). (Tr. 18, 317, 390). Dr. Clower further wrote

> You have asked whether, in my opinion, these impairments allow [Plaintiff] to perform any work on an 8-hour-a-day, five-day-a-week basis. Our response is to this is that it would depend in large part upon the type of work. . . . her chronic back pain would certainly prohibit [Plaintiff] from any kind of manual or semi-manual labor, prolonged standing, prolonged sitting, etc.

(Tr. 390). In response to an interrogatory, dated February 22, 2008, Dr. Clower stated that Plaintiff could sit/stand less than two hours per eight hour workday, could rarely lift less than 10 pounds and never lift more than 10 pounds, and would be required to lie down for four hours per eight hour workday. (Tr. 433).

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not

4

have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Claimant bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant matter, the ALJ determined Plaintiff was not under a disability pursuant to the definition in the Act from August 1, 2005 through the date of decision, July 16, 2008. (Tr. 24). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity at any time since her alleged onset date. (Tr. 16). At step two, the ALJ held Plaintiff had "the following severe impairments: degenerative joint disease of the cervical and lumbar spine." Id. At step three, the ALJ concluded Plaintiff did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19).

The ALJ then determined Plaintiff retained the RFC to perform a substantial range of sedentary work including the capacity to:

> lift 0 pounds[2] occasionally lift/carry less than 10 pounds; she can sit for 6 hours and stand/walk for 2 hours in an 8 hour workday, with a sit/stand option to permit her to shift position to alleviate pain or discomfort; she can climb stairs and ramps, but not ropes, ladders, scaffolds; she can balance, crouch, crawl and kneel and stoop; she should avoid working near heavy machinery; she is capable of working in a low stress environment and can communicate appropriately with supervisors and co-workers and can occasionally interact with the public.

(Tr. 20). The ALJ gave some weight to RFC reports from state medical consultants and more weight to the opinions of Drs. Scharf, Harper-Nimock, McGraw, Dewey, Henkin, and Walls. (Tr. 21). However, the ALJ rejected the opinions of Plaintiff's treating physician, Dr. Clower, because his diagnosis was "inconsistent with the medical record" and Dr. Clower's "flip-flopping opinions destroyed his credibility." (Tr. 17, 22).

At step four, the ALJ utilized the testimony of a VE during the hearing to determine Plaintiff "was unable to perform any [of her] past relevant work." (Tr. 23). At step five, again assisted by the testimony of a VE, the ALJ determined that, "considering the [Plaintiff's] age, education, work experience, and residual functional capacity, the [Plaintiff was] capable of making a successful adjustment to other work that exist[ed] in significant numbers in the national economy." (Tr. 24) Therefore, the ALJ determined Plaintiff was not disabled. Id.

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ

---

[2] Plaintiff concedes the ability to "lift 0 pounds occasionally" likely represents a typographical mistake. (Doc. 9, p. 13).

applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

### B.     Issues on Appeal

Plaintiff raises two issues on appeal. Plaintiff asserts the ALJ erred in her determination at step five that Plaintiff was not disabled because the ALJ failed to present a complete hypothetical to the VE. (Doc. 9, p. 11). Additionally, Plaintiff claims the ALJ erred in rejecting the opinions of Plaintiff's treating physician, Dr. Clower. Id. at

7

15. The Commissioner responds the ALJ's hypothetical properly set forth "an individual with Plaintiff's relevant vocational characteristics." (Doc. 17, p. 9). The Commissioner further contends that, because Dr. Clower's opinions were inconsistent and his suggested limitations were not supported by Plaintiff's history, the ALJ properly discounted Dr. Clower's opinions. Id. at 8.

The Court will consider each of these issues.

### 1. Whether the Hypothetical Posed to the VE Adequately Reflected Plaintiff's RFC

Plaintiff contends the ALJ erred by failing to include the following limitations in her hypothetical: 1) low stress work environment; 2) work that is not near heavy machinery; and 3) work that does not involve ropes, ladders, or scaffolds. (Doc. 9, p. 13). Plaintiff correctly asserts that where, as here, Plaintiff "has non-exertional impairments that significantly limit" the ability to perform sedentary or light work, Step Five of the sequential evaluation should include testimony from a VE. (Doc. 9, p. 12) (citation omitted). Where the ALJ "pose[s] a hypothetical question which comprises all of the [Plaintiff's] impairments," the VE's testimony may constitute substantial evidence. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). The ALJ is not required to include in a hypothetical question any limitations not supported by the record or limitations the ALJ properly rejected. Bouie v. Astrue, 226 F. App'x 892, 894 (11th Cir. 2007) (quoting ``Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004)). However, where the hypothetical employed with the VE does not fully assume all of a claimant's valid limitations, the decision of the ALJ, if based on VE testimony, is not supported by substantial evidence. Pendley v. Heckler, 767 F.2d 1561,

1563 (11th Cir. 1985); Davis v. Apfel, 81 F. Supp. 2d 1289, 1291 (S.D. Ala. 1999) (finding ALJ's decision not supported by substantial evidence when hypothetical to the VE omitted claimant's limitations with a key component of past relevant work).

In the instant case, the ALJ explicitly stated her decision was "based on the testimony of the vocational expert." (Tr. 24). The Court is left, therefore, to consider Plaintiff's limitations and the hypothetical considered by the VE. The ALJ found Plaintiff retained the residual functional capacity to perform sedentary work subject to the following limitations:

> occasionally lift/carry less than 10 pounds; she can sit for 6 hours and stand/walk for 2 hours in an 8 hour workday, with a sit/stand option to permit her to shift position to alleviate pain or discomfort; she can climb stairs and ramps, but not ropes, ladders, scaffolds; she can balance, crouch, crawl and kneel and stoop; she should avoid working near heavy machinery; she is capable of working in a low stress environment and can communicate appropriately with supervisors and co-workers and can occasionally interact with the public.

(Tr. 20). In contrast, the first hypothetical posed by the ALJ assumed a claimant who could:

> sit, stand, and walk for less than two hours. And she should rarely pick up less than ten pounds. That her impairments would require her to lie down at unscheduled times and could be for up to four hours. . . . is also a younger individual with a limited education, but literate in English, and with the past skill level [of four].

(Tr. 513-514).

In response to the first hypothetical, the VE determined the individual would not be able to return to Plaintiff's past relevant work, nor were there any jobs available in the national economy that could be performed with these restrictions. (Tr. 514). The

9

ALJ then asked the VE to assume, for "the second hypothetical . . . the ability to perform sedentary work with the sit/stand option . . . also occasional interaction with the public." Id. The VE responded "there would be some jobs that fit the hypothetical," e.g. surveillance system monitor, table worker, and addresser. (Tr. 515). Even with the additional factors included, Plaintiff is correct that the second hypothetical does not take into account any restrictions resulting from Plaintiff's RFC limitations requiring a low stress work environment, work that is not near heavy machinery, and work that does not involve ropes, ladders, or scaffolds.

Plaintiff's claim that the failure to include these limitations is reversible error is further bolstered by the fact that some of the limitations omitted—low stress environment and distance from heavy machinery—could reasonably be viewed as particularly relevant given some of the available jobs proffered by the VE, namely surveillance monitor and inspection worker for manufactured goods.[3] As it is unclear whether the omitted limitations may have rendered these positions unavailable to Plaintiff, the Court believes it is necessary to remand this case for further proceedings.

### 2. Whether the ALJ's Rejection of Dr. Clower's Opinions was Supported by Substantial Evidence

Plaintiff also argues the ALJ committed reversible error by rejecting the opinion of Plaintiff's treating physician without a showing of good cause. (Doc. 13, pp. 1-2). Plaintiff is correct that, in the Eleventh Circuit, a treating physician's opinion on the nature and severity of a claimant's impairments must be given controlling weight if it is

---

[3] One job suggested by the VE, table worker, was clarified for the ALJ to mean "an inspection worker for various small . . . things . . . that are manufactured." (Tr. 515).

10

well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Further, if the treating physician's opinion is not entitled to controlling weight, then it must be given substantial or considerable weight unless good cause is shown to the contrary. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards, 937 F.2d at 583; 20 C.F.R. § 404.1527(d); SSR 96-6p. "'Good cause' exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing Lewis, 125 F.3d at 1440).

In the instant matter, Dr. Clower offered opinions as to Plaintiff's RFC on three occasions: September 8, 2006, February 5, 2008, and February 22, 2008. (Tr. 317-321, 390-91, 433). Dr. Clower's opinions, as those of a treating physician, were entitled to controlling weight unless they were not well-supported by medically acceptable clinical and laboratory diagnostic techniques or were inconsistent with the other substantial evidence in the record. The ALJ rejected each of Dr. Clower's opinions about the nature and severity of Plaintiff's limitations because she found the evidence supported a finding contrary to Dr. Clower's diagnosis and Dr. Clower's own opinions were not consistent with one another. (Tr. 17).

In rejecting Dr. Clower's September 2006 opinion, the ALJ cited its lack of credibility and inconsistency with the medical record. In support thereof, the ALJ noted that on two separate occasions, Plaintiff self-reported on hospital admittance forms that she walked five miles twice a week with no shortness of breath or chest pain. (Tr. 312,

11

467). The ALJ found those statements inconsistent with Dr. Clower's assessment that Plaintiff was unable to perform even sedentary level work. (Tr. 21-22). The Court agrees Plaintiff's admissions conflict with Dr. Clower's opinion and lend credence to the ALJ's conclusion that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely credible." (Tr. 21). Moreover, the ALJ noted that two independent state medical consultants, after reviewing the medical records, concluded Plaintiff retained a capacity for sedentary level work. (Tr. 295-302, 326-333). Dr. Puestow in July 2006, determined Plaintiff's motor, sensory, reflexes, grip, and fine dexterity were all normal and that her exertional limits were only mild to moderate, allowing Plaintiff to occasionally lift 10 pounds, frequently lift 10 pounds, stand or walk at least 2 hours in an 8-hour workday, and operate hand or foot controls without limit. (Tr. 296). In October 2006, Dr. Goodpasture reported findings substantially the same as Dr. Puestow, including a limitation that Plaintiff should never climb ropes, ladders, or scaffolds. (Tr. 327-28). Finally, Dr. Clower's limitations were also contradicted by Dr. Harper-Nimock who, after examining Plaintiff, concluded Plaintiff had only mild to moderate limitations in her ability to sit, stand, walk, climb, and lift heavy objects and possessed an intact dexterity with regard to the fine motor skills of her hands and fingers. (Tr. 286). The ALJ's conclusion, therefore, that Dr. Clower's September 2006 opinion was contradicted by the medical records, seems based upon evidence "a reasonable person would accept as adequate to support a conclusion." Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998).

However, the Court is not entirely satisfied with the ALJ's treatment of the

opinions provided by Dr. Clower in February 2008. Because the matter is being remanded on the issue of the hypothetical utilized, the Court will require the ALJ, on remand, to reconsider Dr. Clower's two February 2008 opinions and provide more detailed reasons for their rejection. The ALJ found the two opinions to be inconsistent. The inconsistency seized on by the ALJ comes in the first February opinion, a narrative letter, wherein Dr. Clower answered a question about Plaintiff's capacity to work by stating simply, albeit somewhat philosophically, that "it would depend in large part upon the type of work." (Tr. 390). Plaintiff, in her brief, defends the comment as merely a generic statement that does not address actual work related activities. (Doc. 9, p. 18). The ALJ ascribed more sinister motives to the contrast between the two February opinions. In her decision, the ALJ described the discrepancy as evidence that Dr. Clower was simply complying with Plaintiff's request for an opinion to, perhaps, "ingratiate himself with the [Plaintiff's] attorney with an eye toward future business." (Tr. 18).

    The Court takes a more neutral view of the record. The second February opinion was written on a standardized form, with boxes to check and discretely scaled numbers to circle. The first February opinion was a narrative that, rather than evincing nefarious "flip-flopping [that] . . . destroyed [ ] credibility," is more fairly read as a prosaic expansion of Dr. Clower's views regarding Plaintiff's limitations. (Tr. 19). The tone utilized by the ALJ -- calling into question the integrity of another professional based on no more than that letter -- is unproductive and unnecessary. The Court suggests on remand that the ALJ employ a more considered approach which elaborates fully the

13

reasons for discrediting Dr. Clower's opinions.

## IV. CONCLUSION

For the foregoing reasons, the undersigned believes the Commissioner's decision is not supported by substantial evidence and is therefore **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g). On remand, the ALJ shall (1) propound a hypothetical to a vocational expert that clearly sets out all of Plaintiff's limitations contained in the ALJ's RFC finding and (2) provide more detailed reasons for discrediting Dr. Clower's February 2008 opinions. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** at Jacksonville, Florida, this __10th__ day of March, 2010.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record